**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                             :
                                                        :
                Plaintiff,                          :   Civil Action No. 22-cv-00552
                                                        :
v.                                                      :   **COMPLAINT FOR VIOLATIONS OF**
                                                        :   **SECTIONS 14(a) AND 20(a) OF THE**
CMC MATERIALS, INC., WILLIAM P.                         :   **SECURITIES EXCHANGE ACT OF**
NOGLOWS, DAVID H. LI, RICHARD S.                        :   **1934**
HILL, BARBARA A. KLEIN, PAUL J.                         :
REILLY, SUSAN M. WHITNEY,                               :   **JURY TRIAL DEMANDED**
GEOFFREY WILD, and DR. ANNE K.                          :
ROBY,                                                   :
                                                        :
                Defendants.                        :

--------------------------------------------------------- :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.    This is an action brought by Plaintiff against CMC Materials, Inc., ("CMC or the "Company") and the members CMC's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between CMC and Entegris, Inc. and its affiliates ("Entegris").

2.    Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on January 14, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Yosemite Merger Sub, Inc., a wholly owned subsidiary of Entegris ("Merger Sub"), will merge with and into CMC with CMC surviving as a wholly owned subsidiary of Entegris (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each CMC stockholder will receive (i) $133.00 in cash, and (ii) 0.4506 shares of Entegris common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 9% of the combined company and Entegris shareholders will own 91% of the combined company.

3.      As discussed below, Defendants have asked CMC's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CMC's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of CMC stocks and has held such stocks since prior to the wrongs complained of herein.

10.      Individual Defendant William P. Noglows has served as a member of the Board since 2003 and is the Chairman of the Board.

11.      Individual Defendant David H. Li has served as a member of the Board since January 2015 and is the President and Chief Executive Officer of the Company.

12.      Individual Defendant Richard S. Hill has served as a member of the Board since June 2012.

13.      Individual Defendant Barbara A. Klein has served as a member of the Board since April 2008.

14.     Individual Defendant Paul J. Reilly has served as a member of the Board since March 2017.

15.     Individual Defendant Susan M. Whitney has served as a member of the Board since April 2015.

16.     Individual Defendant Geoffrey Wild has served as a member of the Board since September 2015.

17.     Individual Defendant Dr. Anne K. Roby has served as a member of the Board since June 2021.

18.     Defendant CMC a Delaware corporation and maintains its principal offices at 870 North Commons Drive, Aurora, Illinois 60504.  The Company's stock trades on the NASDAQ Global Select Market under the symbol "CCMP."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.      The Proposed Transaction

21.     CMC, together with its subsidiaries, together with its subsidiaries, provides consumable materials to semiconductor manufacturers, and pipeline and adjacent industry customers in North America, Asia, Europe, the Middle East, Africa, and South America. The Company operates in two segments, Electronic Materials and Performance Materials. The Electronic Materials segment develops, produces, and sells chemical mechanical planarization (CMP) slurries for polishing various materials used in IC devices, including tungsten, dielectric materials, copper, tantalum, and aluminum; and various materials that are used in the production

of disk substrates and magnetic heads for hard disk drives; and CMP pads, which are used in conjunction with slurries in the CMP process. This segment also offers sulfuric, phosphoric, nitric, and hydrofluoric acids, as well as ammonium hydroxide, hydrogen peroxide, isopropyl alcohol, other specialty organic solvents, and various blends of chemicals; and develops and manufactures consumable products for cleaning advanced probe cards and test sockets. The Performance Materials segment provides pipeline and industrial materials comprising polymer-based drag-reducing agents for crude oil transmission, valve greases, cleaners and sealants, and related services and equipment; and routine and emergency maintenance services, as well as training services. This segment also offers precision polishing and metrology systems for advanced optics applications; and magneto-rheological polishing fluids, consumables, and spare and replacement parts, as well as optical polishing services and other customer support services; and engages in the wood treatment business. The Company was formerly known as Cabot Microelectronics Corporation and changed its name to CMC Materials, Inc. in October 2020. CMC was incorporated in 1999 and is headquartered in Aurora, Illinois.

22.     On December 15, 2021, the Company and Entegris jointly announced the Proposed Transaction:

> BILLERICA, Mass. & AURORA, Ill.--(BUSINESS WIRE)--Dec. 15, 2021-- Entegris, Inc. (NASDAQ: ENTG) and CMC Materials, Inc. (NASDAQ: CCMP) today announced a definitive merger agreement under which Entegris will acquire CMC Materials in a cash and stock transaction with an enterprise value of approximately $6.5 billion.
>
> Under the terms of the agreement, CMC Materials shareholders will receive $133.00 in cash and 0.4506 shares of Entegris common stock for each share of CMC Materials common stock they own. The total per share consideration represents a 35% premium over CMC Materials' closing price on December 14, 2021, and a 38% premium to the 10-day volume weighted average share price. Upon

completion of the transaction, Entegris shareholders will own approximately 91% of the combined company and CMC Materials shareholders will own approximately 9%.

CMC Materials is a leading supplier of advanced materials primarily for the semiconductor industry. The addition of CMC Materials' leading CMP portfolio will broaden Entegris' solutions set, creating a comprehensive electronic materials offering. The complementary nature of the companies' technology platforms will enable Entegris to bring to market a broader array of innovative and high-value solutions, at a faster pace. These enhanced materials and process solutions for the most advanced manufacturing environments will help customers improve productivity, performance and total cost of ownership.

Bertrand Loy, President and Chief Executive Officer of Entegris, said, "Acquiring CMC Materials will further differentiate our unit-driven platform and advance our ability to provide a broad range of process solutions for our customers, at a faster time-to-solution. The highly complementary combined portfolio creates the industry's most comprehensive and innovative end-to-end electronic materials offering, as well as significantly expands our growing served market and content per wafer opportunity. In addition, we believe the acquisition will allow us to unlock significant growth through enhanced innovation, scale and execution. We also expect to utilize our significant cash flows to rapidly reduce leverage. We are confident that as a combined organization, we will be poised to deliver significant value for our customers, colleagues and shareholders."

"We are excited to be joining forces with Entegris. The combination provides immediate and substantial value to CMC Materials shareholders and provides meaningful participation in the long-term growth opportunities created by the transaction," said David Li, President and Chief Executive Officer of CMC Materials. "CMC Materials and Entegris share highly complementary businesses and capabilities grounded in world-class innovation and customer collaboration. As part of Entegris' leading platform, we will maintain our strong focus on technology innovation and customer partnerships and provide expanded opportunities for our employees. We look forward to what the combined company can accomplish."

**Compelling Strategic and Financial Benefits**

- **Highly Complementary Combined CMP Portfolio Significantly Expands Served Markets and Provides Customers with Comprehensive and Innovative Offering:** Entegris will offer a compelling value proposition to customers in the industry through a broader portfolio of solutions and enhanced operating capabilities, in the fab environment and across the supply chain. The addition of CMC Materials' leading CMP slurries and pads will provide Entegris with a full end-to-end suite of CMP solutions, also including liquid filters (POU and bulk), post-CMP cleaning chemistries and brushes, CMP pad conditioners, particle monitors and chemical packaging products, enabling shorter development times for these solutions. The expanded portfolio will increase Entegris' growing served markets in semiconductor applications to approximately $12 billion as well as its content per wafer opportunity, and it will increase Entegris' unit-driven revenue from 70% to approximately 80%.
- **Accelerates Innovation Capabilities through Greater R&D Scale and Expanded IP Portfolio:** As customers transition to more complex device architectures, there will be increased demand for higher-quality, higher-performing technologies, delivered to market faster. Entegris will have greater capability to innovate and meet evolving customer demand through the deployment of proven, industry-leading commercial, operational and R&D capabilities. In addition, Entegris' deep expertise in purification, contamination control and advanced materials will enhance CMC Materials' long-term technology advancement.
- **Meaningful Revenue Growth and EPS Accretion:** The transaction is expected to be significantly accretive to non-GAAP EPS within the first year post-closing. Entegris expects to realize $75 million in run-rate cost synergies and $40 million in CapEx synergies within 12 to 18 months from the closing of the transaction. In addition, Entegris expects to drive meaningful revenue synergies through co-optimized solutions, cross-selling opportunities and stronger customer response and collaboration.
- **Strong Cash Flow Generation Enables Investments in Growth and Disciplined Deleveraging:** Entegris is targeting pro forma adjusted gross leverage of approximately 4.0x at closing. With approximately $1.1 billion in adjusted EBITDA on a pro forma LTM basis including synergies, Entegris will be well positioned to rapidly reduce its leverage to less than 3.0x, while investing in growth opportunities and continuing its dividend policy for the benefit of Entegris and CMC Materials shareholders. Entegris plans to suspend share repurchases until further notice.

**Additional Terms, Financing and Approvals**

The transaction is to be financed with a combination of equity issued to CMC Materials, new debt and cash on hand. Entegris has obtained fully committed debt financing from Morgan Stanley Senior Funding, Inc.

The transaction is not subject to a financing condition.

The transaction is expected to close in the second half of 2022, subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by CMC Materials shareholders.

**Advisors**

Morgan Stanley & Co. LLC is serving as exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel to Entegris. Goldman Sachs & Co. LLC is serving as financial advisor to CMC Materials, and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

\* \* \*

23.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that CMC's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

24.     On January 14, 2022, CMC and Entegris jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to

8

vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Goldman Sachs in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Goldman Sachs by management of CMC with forming a view about the stand-alone valuation. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2026: Adjusted EBITDA and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their

corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29.    Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for CMC*

30.    With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values of the Company; (ii) line items used to calculate CMC's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the illustrative perpetuity growth rate of 3.00% to

4.00%; (iv) the inputs and assumptions underlying the discount rates ranging from 9.50% to 11.50%; (v) the Company's weighted average cost of capital; (vi) the net debt of the Company as of September 30, 2021; and (vii) the number of fully diluted outstanding shares of CMC.

31.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions for applying the illustrative NTM enterprise value to EBITDA multiples of 12.0x to 15.00x; (ii) the net debt of the Company as of September 30, 2021; (iii) the number of fully diluted outstanding shares of CMC; (iv) the inputs and assumptions underlying the discount rate of 11.50%

32.     With respect to Goldman Sachs' *Selected Precedent Transactions Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Goldman Sachs in the analysis.

33.     With respect to Goldman Sachs' *Premia Analysis*, the Registration Statement fails to disclose the transactions observed and the premia of those transactions.

34.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.   The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes

negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**<u>COUNT II</u>**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of CMC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of CMC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of CMC, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

13

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CMC, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

45.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 21, 2022                    **MELWANI & CHAN LLP**

                                   By:  _/s/ Gloria Kui Melwani_
                                        Gloria Kui Melwani
                                        1180 Avenue of the Americas, 8th Fl.
                                        New York, NY 10036
                                        Telephone: (212) 382-4620

_____

Email: gloria@melwanichan.com

*Attorneys for Plaintiff*